# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched* )<br>*or identify the person by name and address)* )<br>iPhone cellphone )<br>Seizure No. RU-23-0001 Exhibit N-21, believed to be )<br>used by Carlos Antonio IBARRA ) | Case No.  '24 MJ3914 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the     Southern     District of     California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841 | Distribution of Controlled Substances |
| 21 USC 846 | Conspiracy |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

DEWAYNE GORDON  *Digitally signed by DEWAYNE GORDON*
*Date: 2024.10.11 03:12:27 -07'00'*

*Applicant's signature*

Dewayne Gordon, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
         telephone         *(specify reliable electronic means)*.

Date: October 11, 2024

*Judge's signature*

City and state: San Diego, California          Hon. Daniel E. Butcher, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Dewayne Gordon, having been duly sworn, declare and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device:

> iPhone cellphone
> Seizure No. RU-23-0001 Exhibit N-21 (the **Target Device**), believed to be used by Carlos Antonio IBARRA (the **Target Subject)**,

as further described in Attachment A, and to seize evidence of crimes, contraband, fruits of crime, or other items illegally possessed, and property designed for use, intended for use, or used in committing a crime, specifically violations of Title 21, United States Code, Sections 841 and 846, Distribution and Possession with Intent to Distribute Controlled Substances (and Conspiracy to do the same), as further described in Attachment B (the **Target Offenses**). The requested warrant relates to the investigation and prosecution of the **Target Subject** for distribution of fentanyl and cocaine. The **Target Device** is currently stored as evidence at the Drug Enforcement Administration (DEA) located at 2055 Sanyo Avenue, San Diego, CA 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been a sworn DEA Special Agent since September 26, 2021. From that day until January 21, 2022, I was assigned to the DEA Academy where I was trained in Title 21 Investigations, undercover operations, surveillance operations, narcotics smuggling, money laundering, conspiracies, electronic surveillance, interception of wire

communications, and complex investigations. On April 18, 2022, I transferred to the DEA San Diego Field Division. I am currently assigned to the High Intensity Drug Trafficking Area (HIDTA) unit, Group 71, at the San Ysidro District Office and Homeland Security Investigations Fentanyl Abatement Suppression Team (FAST) at the San Ysidro District Office. My duties include the investigation and apprehension of individuals involved in narcotic related activities. I have received formal training in the identification of many types of controlled substances by sight and odor, including methamphetamine, cocaine, and fentanyl. Prior to working for the DEA, I was a Police Officer with the Las Vegas Metropolitan Police Department (LVMPD) for approximately 4 years. As a Police Officer, I was responsible for enforcing criminal laws and protecting citizens within the Clark County of Nevada. During my time at LVMPD, I received formal training in the identification of trafficking techniques used by traffickers of narcotics.

4. During my tenure with DEA, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry and those who possesses and distribute narcotics within and throughout the United States.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones and other portable electronic devices (such as Laptops, iPads, Tablets, etc.). A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual(s) responsible for importing and/or

transporting the concealed narcotics in the United States. These communications can occur before, during and after the narcotics are imported into the United States and transported therein. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with co-conspirators immediately prior to and following their illicit transactions to negotiate prices and quantities, coordinate meeting times and locations, discuss the transportation through checkpoints, and then to discuss future transactions or future payments if the narcotics were "fronted" (delivered without being paid for in advance).

6. As a result of my training and experience, I know that drug traffickers communicate using cellular telephones, including utilizing prepaid calling cards, direct connect (radio-to-radio), and texting capabilities. I also know that drug traffickers often change phones to evade detection by law enforcement. Moreover, I know that drug traffickers get phones from third parties and/or oftentimes subscribe to them in fictitious names in order to mask the true identities of the individuals using the phones.

7. Based upon my training and experience as an DEA Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

3

c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g. Drug traffickers and their co-conspirators often use portable Wi-Fi/hotspot devices. Wi-Fi hotspots are internet access points that allow drug traffickers to connect to a Wi-Fi network, which are "pocket-sized" mobile routers that allow the connection to the internet, via Wi-Fi. This allows the traffickers to make phone calls, via Wi-Fi from anywhere, and limit their personal/identifying data that may be detected.

h. The use of cellular telephones by conspirators or drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

1. Based upon my training and experience as an DEA Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and

4

experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a.    tending to indicate efforts to possess and/or transport with the intent to distribute federally controlled substances within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in possession and/or transportation with the intent to distribute federally controlled substances within the United States;

    d.    tending to identify travel to or presence at locations involved in the possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

2. Since November 2022, Drug Enforcement Administration (DEA) San Ysidro District Office (SYDO) Special Agents (SAs) and Task Force Officers (TFOs) have been investigating the drug trafficking activities of the Victor BOJORQUEZ-Rivas aka "JR" Drug Trafficking Organization (DTO). During the investigation, investigators identified Carlos IBBARA and Luis Angel IBARRA as brothers who are assisting BOJORQUEZ-Rivas by storing and distributing narcotics to local buyers in the San Diego and Los Angeles California areas. Investigators have been utilizing a Confidential Source (hereinafter referred to as CS-1). CS-1 has a prior criminal conviction for Title 21 offenses. CS-1 has been a confidential source with DEA since March 2022. CS-1 is cooperating for

5

potential leniency for future federal charges. To date, CS-1's information has resulted in the seizure of over 12 kilograms of cocaine, 8 kilograms of fentanyl, 5 lbs. of methamphetamine, and $214,000.00 in suspected drug proceeds. CS-1 has also facilitated the identification of drug traffickers in the San Diego, California area. Where possible, investigators have corroborated information provided by CS-1. Investigators have attempted to corroborate CS-1's information by other evidence, including audio recordings, text/SMS/iMessage, WhatsApp messages, physical and electronic surveillances. At this time, based the investigation to-date, investigators believe the information provided by CS-1 is reliable.

3. On October 6, 2022, CS-1 conducted a controlled purchase of approximately 33 grams of cocaine and 64 grams of fentanyl, which was sourced by an unknown individual only known to CS-1 as "PILLAR." PILLAR is believed to be a Mexico Source of Supply. During the controlled purchase PILLAR sent Luis Angel IBARRA to deliver the cocaine and fentanyl to CS-1. Luis Angel IBARRA was driving a grey Volkswagen Jetta bearing California license plate 8XEX171, registered to his brother the **Target Subject** during this drug transaction. The controlled purchase was coordinated by CS-1 with PILLAR through the cellphone text communications. The transaction was both audio and video recorded.

4. On October 11, 2022, CS-1 conducted a controlled purchase of approximately 44 grams of blue "M30" style pills (fentanyl), which was again sourced by PILLAR. During the controlled purchase PILLAR sent the **Target Subject** to deliver the fentanyl pills to CS-1. The **Target Subject** was driving the same grey Volkswagen Jetta bearing California license plate 8XEX171, which was seen during surveillance on the previous controlled purchase. The controlled purchase was coordinated by CS-1 with PILLAR through the cellphone text communications. The transaction was both audio and video recorded.

5. On October 27, 2022, CS-1 conducted a controlled purchase of approximately 206 grams blue "M30" style pills (fentanyl), which was sourced by

| | |
|---|---|
| 1 | PILLAR. During the controlled purchase PILLAR sent the **Target Subject** to deliver the fentanyl pills to CS-1. The **Target Subject** was driving the same grey Volkswagen Jetta bearing California license plate 8XEX171 that was seen during surveillance on the previous controlled purchase. The controlled purchase was coordinated by CS-1 with PILLAR through the cellphone text communications. The transaction was both audio and video recorded. |

6.     On February 3, 2023, Investigators conducted surveillance on the grey Volkswagen Jetta bearing California license plate 8XEX171.  During surveillance, investigators observed the vehicle being driven by a Hispanic male adult who matched the description of both the **Target Subject** and Luis Angel IBARRA. Investigators were not able to determine which IBARRA brothers was operating the vehicle due to their physical similarities. Surveillance followed the vehicle to a Home Depot shopping center where the Hispanic male adult exited the Volkswagen Jetta and hand a white bag to Guillermo RODRIGUEZ-Mata who placed the bag in the trunk of his vehicle. Surveillance units followed RODRIGUEZ-Mata away in his blue Kia Optima bearing California license plate 9DJM897. Surveillance units later coordinated with the San Diego Sheriff's Department to conduct a traffic stop of the blue Kia being driven by RODRIGUEZ-Mata. The traffic stop resulted in the seizure of two (2) kilograms of cocaine and arrest of Guillermo RODRIGUEZ-Mata.

7.     On April 14, 2023, CS-1 informed investigators that BOJORQUEZ-Rivas was sending his "runner" (either the **Target Subject** or Luis Angel IBARRA) to deliver one (1) kilogram of fentanyl to an unknown customer in the Imperial Beach area. The CS further informed investigators that at about 2:30 p.m., the runner would get off work and be ready to make the transaction after 3:00 p.m. The CS stated that a male adult named David LNU would be driving a silver 4-door BMW to pick up the narcotics from BOJORQUEZ' runner. The CS stated that the transaction was taking place at 1190 Hollister St, San Diego, CA 92154. Later that afternoon, investigators observed the

kilogram drug transaction. Investigators executed a state search warrant of 1190 Hollister St, San Diego, CA 92154 which resulted in the seizure of one (1) kilogram of fentanyl.

8. On April 27, 2024, investigators executed a state search warrant (2304261522-OTH-DGB-SW) at address: 2464 Van Ness Ave, National City, CA 91950, the home of Luis Angel IBARRA. Investigators seized 3.3 kilograms of fentanyl, 661 grams of Blue M30 pills (fentanyl), and 540 grams of heroin from the residence.

9. On July 31, 2024, a federal Grand Jury seated in the Southern District of California voted a true bill of indictment regarding Guillermo RODRIGUEZ-Mata, the **Target Subject**, and Luis Angel IBARRA.

10. On August 26, 2024, the **Target Subject** was arrested and charged with 21 USC 841 (a)(1); Distribution of Fentanyl and Cocaine and 21 USC 841 (a)(1), 846 Conspiracy to Distribute Fentanyl and Cocaine.

11. The **Target Device** was found on the **Target Subject**'s person and was seized at the time of arrest. The **Target Subject** was shown the **Target Device** and identified the **Target Device** as belonging to him.

12. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that Guillermo RODRIGUEZ-Mata, the **Target Subject**, and Luis Angel IBARRA were members of a narcotics trafficking conspiracy that began at a date unknown before October 2022 and, for at least the **Target Subject** and Luis Angel IBARRA, continued up to and possibly beyond April 27, 2024.

13. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit also believe that this conspiracy was coordinated, in large part, through the cellphone text communications.

14. Based on my training and experience, including my personal experience as a cellphone user, that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other

8

digital information are stored in the memory of the **Target Device** (either intentionally or automatically) which may identify other persons involved in narcotics trafficking. Because of the ubiquitous use of cellphones, their growing memory capacity, and their routine storage processes, this information is often retained on the cellphone for long periods of time, months or even years after they were created. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of Luis Angel IBARRA, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the **Target Device**.

15. Finally, in my training and experience, drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual distribution event. Coconspirators communicate with one another in efforts to ensure success in getting their valuable cargo to the distributor who will conduct end-user sales. In this case, I believe the coordination between Luis Angel IBARRA and others likely began at least one month before the October 22, 2022, controlled purchase. The quantities of fentanyl and cocaine involved in this investigation and necessitate a significant level of coordination and communication in order to sell and/or distribute. Therefore, I respectfully request permission to search the **Target Device** for evidence of the **Target Offense** from September 6, 2022 (a month before the first controlled purchase), up to and including May 27, 2024 (a month after the state search warrant of Luis Angel IBARRA's residence).

## METHODOLOGY

16. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

9

personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

19. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

# CONCLUSION

20. Based on all of the facts and information described above, my training and experience, and consultations with other law enforcement officers, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of **Target Subject**'s violations of the **Target Offenses**. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

DEWAYNE GORDON
Digitally signed by DEWAYNE GORDON
Date: 2024.10.11 03:17:47 -07'00'

_____
Special Agent Dewayne Gordon
Drug Enforcement Administration

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this __11th__ day of October, 2024.

_____
HON. DANIEL E. BUTCHER
UNITED STATES MAGISTRATE JUDGE

11

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

> iPhone cellphone
> Seizure No. RU-23-0001 Exhibit N-21 (the **Target Device**), believed to be used by Carlos Antonio IBARRA (the **Target Subject)**

The Target Device is currently in the possession of the Drug Enforcement Administration (DEA) located at 2055 Sanyo Avenue, San Diego, CA 92154.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, web history, files, metadata, photographs, audio files, videos, and location data, for the period September 6, 2022, up to and including May 27, 2024:

a. tending to indicate efforts to possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above

which are evidence of violations of 21, U.S.C., §§ 841 and 846.